JOHN F. DONOVAN *vs.* MARGARET F. POTTER *et al.*

APRIL 10, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a probate appeal. From a decree entered in the probate court of Woonsocket, refusing to admit to probate an instrument, dated June 10, 1936, purporting to be the last will and testament of Felix Henry O'Neill, deceased, the proponent thereof took an appeal to the superior court. The case was tried before a justice of

that court, sitting without a jury, who thereupon rendered a decision that the instrument in question was not entitled to probate because it was obtained by appellant's exercise of undue influence over the testator. It is before us on the proponent's exception to that decision.

The following facts appear in evidence: The testator died in Woonsocket on May 10, 1942 at the age of seventy-two years. From early childhood his physical and mental faculties were seriously and permanently impaired. The appellant was his closest friend and for about eighteen years had been acting as guardian of the testator. On February 16, 1936 the testator was adjudged insane by the Twelfth District Court and was committed to the State Hospital for Mental Diseases. Certain information concerning the testator, and appearing on the records of that hospital, was provided largely by the appellant. It contained no reference to any of the appellees, although they were the testator's next of kin, being first cousins; and it gave the appellant as the testator's cousin, although no blood relationship appeared. During the first few days of the testator's confinement the appellant filed a petition, upon which he was later appointed legal guardian of the person and estate of the testator, on the ground that the latter was of unsound mind. He testified, however, that this petition was not filed until about two weeks later at the testator's request. The guardian's inventory amounted to $8811.11 and appellant remained as guardian until testator's death. On May 1, 1936 the testator had improved mentally to some extent and was released, on probation, in the personal custody of the appellant. This probation was renewed every six months thereafter until he was discharged on May 15, 1938.

The appellant was not a lawyer but worked as a ticket seller for the railroad. The appellant testified on direct examination as follows: The testator came to the railroad station within a few days after his first release, on probation, from the state hospital and requested him to draw a new will in which the appellant would be more adequately rewarded

for his many favors to the testator. The latter at that time had in his possession a will which he had executed in 1923 and which was drawn by one of two lawyers who had witnessed its execution. It contained a small legacy to the appellant but did not name him as a residuary legatee. The appellant told the testator to go back home; to make notes of what he wanted; and he, the appellant, would call in a couple of days to draw a new will. He later called at the testator's room where the latter read to him the notes that had been prepared. The appellant made certain notations and then and there drafted in longhand an instrument which followed most of the general pattern of the testator's 1923 will but substantially changed it by making appellant the sole residuary legatee.

The appellant then had this instrument typewritten by his own niece, who lived in Pawtucket, and later delivered it to the testator for study, as he testified, "because I didn't want to have any repetition whatsoever or any changes in it". On June 10, 1936, at the appellant's office in the railroad station, the instrument was executed by the testator in the presence of two persons who also worked for the railroad and who, at appellant's instance and request, acted as witnesses. They testified substantially that they had no sustained conversation with the testator; that only a part of the will was read at that time by the appellant to the testator before his signature; that the testator stood or sat without displaying any particular interest in the proceeding; and that the appellant took complete charge of the whole affair. He then "let" the testator have the executed new will for a short time, after which it was returned to him and he kept it in his office, although he knew that the testator had a safe deposit box where his stocks were kept.

The appellant, on cross-examination, gave other testimony concerning events which led him to draw the new will and the circumstances surrounding its drawing, execution and later custody, and the disposition of the 1923 will, which testimony conflicted with important facts testified to by him

on direct examination and previously in the probate court. There was also testimony for the appellees to the effect that the testator had expressed a desire not to have the appellant as his guardian because the Donovans "were looking for the bank books"; that the testator, who never was mentally strong, had been for years before the guardianship under the domination and control of the appellant in regard to certain business affairs; and that during that period the appellant had successfully exercised his influence over the testator on at least two occasions.

The appellees were not informed by appellant, after the testator's death, of the existence of the new will, although they were the testator's next of kin and one of them was a legatee under such will. The appellant delayed presenting the contested will to the probate court for about twenty-five days after the testator's death "to see if there was anybody else who had any other will that was being presented." After the new will was rejected by the probate court, on the ground that the testator's testamentary capacity had not been shown, and the appellant had taken an appeal, he also filed a petition to probate the 1923 will, although he had testified that such will had been delivered to and kept by the testator. He explained that it was found by him accidentally when looking through some books that were given to him by the testator. There were other circumstances in evidence which had a bearing on the credibility of appellant's testimony.

The appellant first contends that the trial justice based his decision solely on a finding that the will was obtained by the appellant's exercise of undue influence over the testator; that such issue was, as a matter of law, not properly before the superior court; and that therefore the decision was wrong. He contends that, because the probate court rejected the will solely on the ground of testator's lack of testamentary capacity and because he alone filed an appeal and reasons thereof, the court necessarily was limited to such reasons, which excluded the issue of undue influence; and he argues that this contention is supported by certain

language taken from *Liscomb* v. *Eldredge,* 20 R. I. 335, 336; *McAlear* v. *McAlear,* 62 R. I. 158; *Vaill* v. *McPhail,* 34 R. I. 361; and rule 14 of the Rules of Practice of the Superior Court.

The reasons of appeal relied upon were as follows: "1— Said testamentary writing was entitled to be admitted to probate. 2—Said testamentary writing was duly executed as required by law. 3—Said testamentary writing is the legal and valid last will and testament of the deceased. 4— That Felix Henry O'Neill, on June 10, 1936, was of sufficient sound and disposing mind and memory to make and execute a valid testamentary instrument."

We agree with the trial justice that the issue of undue influence was properly before the superior court. Under the first and third reasons of appeal the proposed will was not entitled to be admitted to probate unless it was legally the valid last will and testament of this testator. But it would not be such a will if it were procured by the appellant's exercise of undue influence over him.

Moreover, in our opinion, any competent appeal by the proponent of an alleged will from a decree of the probate court refusing to admit such will to probate would, in the nature of things, entitle the contestant to raise in the superior court the issue of undue influence. This is so because that issue was open to the contestant in the probate court without any formal allegation; and it is now well established that ordinarily a trial in the superior court upon an appeal from a decree entered in the probate court is essentially a trial *de novo* upon all questions that were properly before the probate court. *Vaill* v. *McPhail, supra; McAlear* v. *McAlear, supra; Davis* v. *Higgins,* 59 R. I. 339, 342.

Nothing in the cases cited by appellant, *supra,* or in rule 14 is inconsistent with the above conclusions. In the *Liscomb* case neither the issue of undue influence nor the right of a contestant to raise it was involved. The pertinent question before this court was upon the contestant's motion to dismiss the proponent's exceptions because the reasons of

appeal were not sufficiently specific under the statute. This court held that the proponent's general reason of appeal, as there filed, was sufficient to notify the adverse party of the grounds of appeal as effectively as if such grounds, *viz.*, testamentary capacity, execution and attestation, were stated separately. The court nowhere held, expressly or impliedly, that, on such an appeal by the *proponent* of a will, the contestant thereof was barred from raising in the superior court the issue of undue influence, or that such court was then limited solely to the issues of testamentary capacity and of formal execution and attestation.

The case of *McAlear* v. *McAlear, supra,* was before this court largely upon the administrators' exception to a decision disallowing a certain item in their final account, which item was by nature severable and was not within the reasons of appeal. Nowhere was the issue of undue influence involved and nothing stated in that case is authority for the appellant's contention here that upon such a proponent's appeal to the superior court the issue of undue influence was not open to the contestant or the court.

Nor does the appellant acquire any support from rule 14 of the Rules of Practice of the Superior Court. Such rule does not purport to give or take away any substantial rights of the parties or to limit the jurisdiction of the court; but it merely provides for the order of trial and prescribes the mode of procedure upon an appeal from a decree admitting or refusing to admit to probate any purported will.

The appellant next contends that even if the issue of undue influence were properly before the superior court, there was no evidence from which that court could find that the will was obtained by the appellant's exercise of undue influence over the testator. He asserts that the trial proceeded solely upon the issues whether the testator had sufficient mental capacity and whether the instrument in question was executed and attested in accordance with statutory requirements; that no evidence was presented by appellees at the trial tending to prove undue influence; and

that this issue was never mentioned, directly or indirectly, until the evidence had been concluded.

We disagree with all these contentions. The issue of undue influence was expressly referred to earlier in the trial while the appellant was under direct examination. Significantly the appellant made no objection then to the effect that such issue was not properly before the court. Nor did he so object when it was again mentioned at the conclusion of the trial. The appellant states in his brief: "The Trial Judge in his rescript, on page 7, said: 'This point was not raised during the trial and is introduced for the first time in his (appellee's) brief.'" The part of the trial justice's rescript thus referred to clearly calls attention to the fact that the appellant's contention concerning the court's alleged lack of jurisdiction to consider the issue of undue influence was not raised by him during the trial and was introduced for the first time when he, the *appellant,* filed his brief in that court.

The trial justice filed a rescript in which he reviewed much of the evidence, with particular reference to the various arguments which were submitted by the appellant and which were renewed before us. He referred to the law governing undue influence and placed upon the appellees the burden of proving this issue. He pointed out the evidence which led him to the conclusion that the testator had mental capacity requisite to the valid execution of a will; but he emphasized that he was not "a strong-willed person"; that he "was quite the contrary" and that "by reason of his weakness and subnormality of body and mind, he was relatively easy prey for a stronger mind to work upon". He observed that there were numerous inconsistencies, discrepancies, improbabilities and exaggerations in the appellant's uncorroborated testimony; and, wholly apart from any presumption of undue influence, he came to the conclusions, in substance, that the appellant unquestionably had the opportunity to unduly influence the testator; that he had the motive to exercise such influence; that the credible evidence concerning the drawing and execution of the instrument

clearly established the fact that its execution was not the free and voluntary act of the testator, but was actually directed and determined by the appellant, whose strong mind and will were substituted for the weak mind and will of the testator.

From an examination of the transcript we cannot say that these findings are not supported by the weight of the credible evidence. Apart from portions of the appellant's self-serving and uncorroborated testimony, the credibility of which was passed upon unfavorably by the trial justice, we find little or nothing to suggest that the testator knew or desired the changes in his 1923 will which were made by the instrument in question.

Concededly no one circumstance here can be relied on to establish the appellant's exercise of undue influence over the testator and much of the evidence thereon came necessarily from the appellant. But the whole pattern of circumstances in evidence beginning with appellant's confidential relationship and involving the opportunity and motive to influence the testator, suspicious circumstances and secrecy surrounding the drawing, execution and custody of the will, successful domination and influencing of the testator on other occasions before the execution of the will and before appellant became testator's legal guardian, the lack of any independent advice to testator and the lack of adequate corroborative evidence that the testator requested changes in his 1923 will and desired or knew the contents of the new will, make it impossible for us to say that the trial justice's decision was clearly wrong.

The appellant's exception is overruled and the case is remitted to the superior court for further proceedings in accordance with its decision.

*John R. Higgins, Higgins & Silverstein,* for appellant.
*John J. Mee,* for appellees.